IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWEST DIVISION

| | |
|---|---|
| NOLA ANDREWS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 11-5011-CV-SW-DGK-SSA |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER AFFIRMING ALJ

Plaintiff Nola Andrews seeks judicial review of the Commissioner's denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42. U.S.C. § 401, *et seq*. Plaintiff has exhausted all administrative remedies, and judicial review is now appropriate under 42 U.S.C. § 405(g).

Plaintiff alleges she became disabled as of May 5, 2005, at the age of 53. After independent review of the record, carefully considering the arguments set forth by the parties, the Court finds the Commissioner's decision denying disability benefits is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

### Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are consistent with the Social Security Act, the relevant case law, and the regulations, and whether they are

1

supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* In making this determination, the court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Id.* If substantial evidence in the record supports the Commissioner's decision, the court may not reverse because substantial evidence in the record supports a contrary result or because the court may have decided the case differently. *Id.*

## Discussion

To establish entitlement to benefits, Plaintiff must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of no less than 12 months. 42 U.S.C. §§ 423(d) and 1382(a)(3)(A). To determine a claimant's eligibility for benefits, the Commissioner employs a five-step evaluation process.[1] *See* 20 C.F.R. 404.1520(a)-(f) and 416.920(a).

Plaintiff claims disability based on degenerative disc disease; pain in her hands, legs, and right foot; and a mental impairment. At her hearing, the administrative law judge ("ALJ") found that Plaintiff's degenerative disc disease of the lumbar spine was a severe impairment but

---

[1] There is a five-step process for determining eligibility. If the fact-finder determines at any step of the evaluation process that the claimant is or is not disabled, the inquiry does not continue. The applicant bears the burden of showing he is disabled from steps one through four of the process. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). At step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *Id.* The steps proceed as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, the applicant is not disabled; if not, the inquiry continues. At step two, the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments that has lasted or is expected to last for a continuous 12-month period. If not, the applicant is not disabled; if so, the inquiry continues. At step three, the Commissioner considers whether the impairment or combination of impairments meets the criteria of any impairment listed in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four, the Commissioner considers if the applicant's residual functional capacity allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five, the Commissioner considers whether, in light of the applicant's residual functional capacity, age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King*, 564 F.3d at 979 n.2.

determined that Plaintiff retained the residual functional capacity ("RFC") to perform work at the light exertional level, with only occasional bending, stooping, crouching, climbing, crawling, kneeling, balancing, and no overhead use of her right arm.

Plaintiff argues that: (1) the ALJ erred in finding that Plaintiff's mental impairments, hand, leg, and right foot pain were "non-severe;" (2) the ALJ improperly determined Plaintiff's RFC; (3) the ALJ erred in determining that Plaintiff could perform her past relevant work; and (4) the ALJ improperly evaluated Plaintiff's credibility.

### A. Substantial evidence on the record supports the ALJ's finding that Andrews' mental impairments, hand, leg, and right foot pain were non-severe.

Plaintiff's first allegation is that the ALJ erred in failing to find that Plaintiff's mental limitations and hand, leg, and right foot pain were "severe" impairments as defined by the regulations. Specifically, Plaintiff alleges that the ALJ "failed to cite to any evidence or undergo any analysis as to why she determined these impairments to be non-severe" (Doc. 7, p. 9). Plaintiff argues that the medical evidence supports her allegation that she had severe impairments in all of these categories.

The Court finds that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments, hand, leg, and right foot pain were non-severe. In order to meet the threshold severity requirement at step two, a claimant must show (1) she has an impairment or combination of impairments which (2) significantly limits her physical or mental ability to perform basic work activities[2] without regard to age, education, or work experience. 20 C.F.R. §§ 404.1520(c), 404.1521(a). The burden of establishing a severe medically determinable

---

[2] Basic work activities include physical functions such as walking, sitting, and lifting; mental functions such as understanding, performing, and remembering simple instructions; using judgment; and dealing with changes in a routine work situation. 20 C.F.R. § 404.1521(b).

3

impairment is on the claimant. *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007). As the 8th Circuit has observed, "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing." *Id.* (internal citation omitted).

Plaintiff first maintains that the ALJ should have found her mental impairments to be severe. In support of this argument, Plaintiff references a consultative evaluation prepared by Jennifer Alberty, Psyc.D., who diagnosed Plaintiff with Major Depressive Disorder, Single Episode. R. at 227. She also points to her global assessment functioning ("GAF") score of 50 and her limitations in activities of daily living and social functioning.

However, a claimant's diagnosis with a mental or emotional impairment does not necessitate a finding that the impairment is severe. *See Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011). Moreover, the regulations require that the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. A diagnosis of "Major Depressive Disorder, Single Episode" does not necessarily meet this requirement.[3]

As to Plaintiff's GAF score, neither the Social Security regulations nor the case law require an ALJ to determine the extent of an individual's mental impairment based solely on GAF score. In fact, the Commissioner "has declined to endorse the GAF score for 'use in the Social Security and [Supplemental Security Income] disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders

---

[3] A "Major Depressive Disorder is a mood disorder characterized by at least one Major Depressive Episode(s), with no history of Manic, Mixed, or Hypomanic Episodes. A person who suffers from a "Major Depressive Episode" must either have a depressed mood or a loss of interest or pleasure in daily activities consistently for at least a two week period. DSM IV.

4

listings.'" *Wind v. Barnhart*, 133 Fed. Appx. 684, 692 n.5 (11th Cir. 2005) (quoting 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)).

Finally, although Plaintiff argues that the ALJ did not expressly address Plaintiff's limitations in daily living activities, the ALJ remarked that the "claimant's allegations of significant limitations are not borne out in her description of daily activities. She is able to do household chores and cook. . . . She attends church services and regularly socializes." R. at 16.

In addition, the ALJ accurately noted that Plaintiff "did not allege disability due to any mental problem." R. at 14. In fact, in her Disability Report, Plaintiff made no mention of mental disability and she described no mental impairments when asked what prevented her from being able to work. R. at 131. Furthermore, the record indicates that Plaintiff did not take medication or pursue therapy for her mental limitations. R. at 27. When asked by the ALJ about any mental impairments, Plaintiff responded, "I have—I mean, at times I have problems, you know. I get depressed and stuff. But, I have good days and bad days." R. at 27.

With regard to Plaintiff's alleged impairments in her hand, leg, and right, foot, the Court also finds the ALJ's decision is supported by substantial evidence of record. Plaintiff argues that Dr. Subramanian found that she exhibited "decreased range of motion in her knees and lumbar spine with positive straight leg raises at 80 degrees," rather than the normal 90 degrees (Doc. 7). However, Dr. Subramanian also remarked that Plaintiff's "range of motion of all of the joints [was] fairly well preserved." R. at 217. Additionally, the ALJ observed that other than Dr. Subramanian's one finding, Plaintiff's physical examinations consistently showed normal range of motion and negative straight leg raises during the relevant period. R. at 15-16, 206, 243-44, 250, 266, 271.

5

With regard to Plaintiff's complaint of right foot pain, the ALJ correctly relied on treatment notes showing that Plaintiff walked with a normal gait and made few complaints about her pain. Similarly, the record reflects minimal complaints of hand pain to treating sources during the relevant period. In fact, during her hearing, the vocational expert testified that she could find only one record of claimant's hand pain in the record on May 12, 2006 when claimant noted "some pain in the left thumb with grasping." R. at 34. Accordingly, the Court finds the ALJ's determination is supported by substantial evidence on the record.

## B. The ALJ Properly Assessed Plaintiff's RFC.

Incorporating all impairments and restrictions that she found credible, the ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) except for occasional bending, stooping, crouching, climbing, crawling, kneeling, balancing, or overhead lifting with her right arm. R. at 15. Plaintiff argues that the ALJ's determination of her RFC does not take into account all of her impairments and is not reflective of her functional abilities. Plaintiff also argues that the ALJ "failed to include an appropriate bridge demonstrating how the evidence of record supports the RFC" (Doc. 7, p. 13). Finally, Plaintiff asserts that the ALJ failed to properly consider and weigh the opinions of medical testimony in determining her RFC.

The Court finds the ALJ's RFC determination is appropriately linked to and supported by the medical evidence. As Plaintiff notes, Social Security Ruling 96-8p requires that a residual functional capacity "include a narrative discussion describing how the evidence supports each conclusion." SSR 96-8p. The ALJ provided this narrative by summarizing the evidence she relied upon in determining Plaintiff's severe and non-severe impairments. Because the ALJ

6

explains each conclusion using support from evidence in the record, the RFC determination meets the requirements imposed by SSR 96-8p.

The Court also finds that the ALJ properly considered the medical opinions of record. Plaintiff argues that the ALJ erred in assigning too much weight to the opinion of Dr. Gurvey and too little weight to the opinion of Dr. Alberty who opined that Plaintiff experienced "emotional dysfunction at a severity that would preclude her from employment." R. at 228. Dr. Alberty, however, was a consultative examiner who saw Plaintiff on only one occasion. Even if Dr. Alberty had been a treating source rather than a consultative physician, her conclusion would not have been entitled to controlling weight because it invades the province of the Commissioner. *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007). Furthermore, the ALJ properly concluded that Dr. Alberty's conclusion was inconsistent with Plaintiff's testimony and with the other evidence of record.

Plaintiff also asserts that the ALJ relied on the opinion of Dr. Gurvey "standing alone" (Doc. 7, p. 15). This is not true. The ALJ appropriately considered Dr. Gurvey's opinion along with the medical record as a whole. The ALJ also emphasized Dr. Subramanian's findings which revealed that Plaintiff had normal range of motion, strength, and gait. R. at 15, 217. Because Dr. Gurvey and Dr. Subramanian's findings were consistent with repeated examinations by Plaintiff's other treating sources, including Dr. Al-Shatir, who opined that Plaintiff "d[id] not have acute evidence requiring medical care at the present time," the ALJ properly considered them in determining Plaintiff's RFC. R. at 244.

Thus, the Court upholds the ALJ's determination of Plaintiff's RFC, finding that the ALJ's determination was based on substantial evidence of record and properly included only Plaintiff's credible limitations. *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010).

## C. The ALJ Properly Determined that Plaintiff Retained the RFC to Perform Her Past Relevant Work.

The ALJ found that Plaintiff could perform her past work as a nut sorter, sewing machine operator, and cafeteria attendant. R. at 17. Plaintiff argues that the ALJ's determination of her ability in this regard was based on an improper RFC. Plaintiff also maintains that the ALJ accepted the testimony of the vocational expert without including any other analysis or rationale for making this determination.

The Court finds this argument meritless, as the ALJ fully considered the demands of each of Plaintiff's prior jobs and whether she could maintain them on a continuing basis. After engaging in a credibility analysis and fully evaluating the record, the ALJ properly determined Plaintiff's RFC. When posed with the hypothetical argument that included Plaintiff's age, education, and RFC for light work with no overhead lifting of the right arm, the vocational expert testified that the hypothetical individual could perform past relevant work that exists in the national economy. R. at 41. An ALJ may rely on a vocational expert's expertise and vocational tools to determine the demands of a particular job. *Lowe v. Apfel*, 226 F.3d 969, 972-73 (8th Cir. 2000). Although the ALJ did not discuss Plaintiff's work as she actually performed it, this does not constitute error. A finding that the claimant can perform work as it is generally performed is sufficient at step four. *Lowe*, 226 F.3d at 973 ("Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled.").

8

### D. The ALJ Properly Assessed Plaintiff's Credibility.

Plaintiff's final argument is that the ALJ erred in assessing her credibility. Particularly, Plaintiff argues that the ALJ did not acknowledge or examine the *Polaski* factors fully before discounting his subjective complaints of pain. 739 F.2d 1320 (8th Cir. 1984).

When assessing a claimant's credibility, "the ALJ must look to the claimant's daily activities; the duration, frequency, and intensity of pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions." *Finch v. Astrue,* 547 F.3d 933, 935 (8th Cir. 2008) (citing *Polaski,* 739 F.2d at 1322). Credibility determinations are generally the province of the ALJ, and courts will defer to an ALJ's explicit credibility determination when it is supported by "a good reason." *Finch*, 547 F.3d at 935. Lack of objective medical evidence is not a sufficient basis on which to discount a claimant's subjective symptoms, but it is a factor to consider. *Polaski*, 739 F.2d at 1322.

In discounting Plaintiff's credibility, the ALJ relied on the inconsistencies between Plaintiff's assertions and the substantial evidence of record. For example, contrary to Plaintiff's assertions of intense and frequent pain, the ALJ properly considered that ALJ's treatment had been relatively routine, infrequent, and conservative. R. at 16. *Polaski*, 739 F.2d at 1322 ("duration, frequency and intensity of the pain" is one factor to be considered in assessing the claimant's credibility). During her alleged period of disability, Plaintiff sought sporadic treatment for impairments and frequently went months without consulting a doctor for her problems. R. at 170-273.

The ALJ also properly noted that Plaintiff's treating sources imposed no physical restrictions upon her. R. at 16. While an ALJ may not discount allegations of disabling pain

9

solely on the lack of objective medical evidence, it is one factor an ALJ may consider in determining a claimant's credibility. *Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004).

Finally, the ALJ properly considered Plaintiff's account of daily living activities in assessing her credibility. *Wildman*, 596 F.3d at 968. For example, Plaintiff acknowledged that she was able to clean her home, grocery shop, do laundry, prepare meals, drive, visit family, and go to church. R. at 16, 27-29, 148-50. Plaintiff correctly notes that the ALJ was mistaken in stating that Plaintiff cared for her daughter on a daily basis, when in fact Plaintiff testified that her daughter lives in the area and calls her every day. R. at 28. Although the ALJ was mistaken in this regard, the record indicates that even in light of this mistake Plaintiff's daily living activities were substantial. Therefore, the Court finds this error non-prejudicial.

Overall, the ALJ articulated the inconsistencies on which she relied in discrediting Plaintiff's subjective complaints and these consistencies are supported by the record. According, the Court will defer to the ALJ's credibility assessment.

## Conclusion

After careful examination of the record as a whole, the Court finds the Commissioner's determination is supported by substantial evidence on the record. Accordingly, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**


Date: February 7, 2012           /s/ Greg Kays
                                 GREG KAYS, JUDGE
                                 UNITED STATES DISTRICT COURT

10

Case 3:11-cv-05011-DGK   Document 9   Filed 02/07/12   Page 10 of 10